# UNITED STATES DISTRICT COURT
## for the
### Eastern District of North Carolina

**FILED**

**JUN 1 0 2026**

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ ᴋᴺ _____ DEP CLK

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Josue Alejandro Quintanilla-Reyes | ) | Case No. 5:26-MJ-1902-JG |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____ March 7, 2025 ____ in the county of ____ Wake ____ in the ____ Eastern ____ District of ____ North Carolina ____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(5)(A) & 924 | Possession of a firearm by an alien illegally and unlawfully present in the United States |

This criminal complaint is based on these facts:

Please see attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Christopher E. Brant, HSI SSA
*Printed name and title*

On this day, SSA Christopher E. Brant appeared before me via telephone, was placed under oath, and attested to the contents of this Complaint.

Date: 10 JUNE 2026

_____
*Judge's signature*

City and state: ____ Raleigh, North Carolina ____

James E. Gates, U.S. Magistrate Judge
*Printed name and title*

LBW

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

AFFIDAVIT

1.    I, Christopher E. Brant, depose and state that I am a Special Agent (SA) of the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed for over 19 years. I am currently assigned to the HSI Raleigh, North Carolina field office (HSI-Raleigh) as a Supervisory Special Agent (SSA) and my duties include supervising numerous Special Agents (SAs), a Criminal Analyst, and other staff, who, among other things, investigate violations of Titles 8, 18, 19, 21, 31, and 42 of the United States Code.

2.    Prior to my appointment as an SSA, I worked over 16 years as an SA at HSI Raleigh and led or participated in hundreds of investigations involving criminal and/or administrative violations related to money laundering, intellectual property rights, narcotics trafficking, bulk cash smuggling, identity theft, immigration benefit and document fraud, human smuggling, human trafficking, the illegal entry and/or re-entry of aliens, illegal aliens in possession of firearms and ammunition, and immigration status violators. Since 2012, I have also served as the HSI Raleigh senior firearms instructor, use of force instructor, and tactics instructor.

3.    Prior to reporting for assignment at HSI-Raleigh, I attended training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, where I received instruction in Federal criminal statutes; search, seizure, and arrest

LBW                                         1

authority; use of force; and many other facets of federal and general law enforcement. Prior to my employment with HSI, I worked five years as an accountant and obtained undergraduate and master's degrees in business administration with concentrations in finance.

4.      This affidavit is submitted as evidence of probable cause supporting the arrest warrant for Josue Alejandro Quintanilla-Reyes (hereinafter referred to as "QUINTANILLA"), a national and citizen of Honduras illegally and unlawfully present in the United States, who was found in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5)(A).

5.      Because this affidavit is being submitted for the limited purpose of securing a warrant to arrest QUINTANILLA, I have set forth only those facts I believe are necessary to establish probable cause to believe that the aforementioned violation occurred, and that QUINTANILLA committed it. The facts contained in this affidavit come from my personal involvement in this investigation, information obtained from others involved in this investigation, and a review of the records and documents obtained during the course of this investigation.

6.      On or about March 7, 2025, at approximately 6:20 a.m., members of the Wake County Sheriff's Office and other law enforcement and emergency response personnel responded to reports of a motorist having been shot on Interstate 40 Eastbound, near Harrison Avenue (Exit 287) in Cary, North Carolina (Wake County), within the Eastern District of North Carolina. According to investigative reports, at this time, a male with the initials R.B.C. was operating a white Chevrolet Silverado

truck, bearing North Carolina registration XXX6501, as the sole occupant, traveling eastbound on Interstate 40. While traveling, he became involved in an altercation with the driver of a white Honda Accord, bearing North Carolina registration XXX4401, who was later determined to be QUINTANILLA. During the altercation, QUINTANILLA, who was likewise traveling alone in his vehicle, discharged multiple rounds from a firearm through the front passenger window of his Honda Accord, targeting the front driver's area of the Chevrolet Silverado. The shooting was recorded by a witness, who was traveling directly behind the two vehicles during the altercation. The video shows that QUINTANILLA's passenger window was open at the time of the shooting, but R.B.C.'s driver's window was closed; at least one of the fired rounds shattered the glass of R.B.C.'s driver's window, and the glass sprayed onto the highway, the Honda Accord, and the hood and windshield of the car the witness who recorded the shooting was driving.

7.     At least one of the fired rounds struck R.B.C. The round entered R.B.C.'s left arm and penetrated his chest cavity, causing injuries to his vital organs, including the lungs and arteries, ultimately resulting in his death. Immediately after the shooting, R.B.C. managed to pull the Chevrolet Silverado to the side of the road, but the vehicle only stopped after hitting a guardrail near Harrison Avenue. Shortly afterwards, witnesses and responding emergency response personnel found R.B.C. in the Chevrolet Silverado's driver's seat struggling to breathe and covered in blood. R.B.C. was subsequently transported to the hospital, where he was pronounced

LBW                                    3

deceased. QUINTANILLA, however, fled from the scene in the Honda Accord, and a manhunt began.

8. The license plate information on the white Honda Accord led investigators to QUINTANILLA. Investigators located QUINTANILLA on March 7, 2025, outside of his residence located at 4600 University Drive, Apartment 512, Durham, North Carolina. He was detained by investigators after being observed departing his residence and entering the driver's seat of the previously identified white Honda Accord.

9. Following QUINTANILLA's detention, investigators sought and obtained a search warrant for his residence. During the execution of the warrant, investigators recovered, among other things, the following:

   a. Glock 23 .40 caliber pistol, bearing serial number LMX380

   b. Three Glock magazines containing 6, 10, and 6 rounds, respectively, of .40 caliber ammunition

   c. Marlyn Glenfield Model 60 .22 caliber rifle, bearing serial number 234745585

   d. Forty-two (42) rounds of .22 caliber ammunition

10. After detaining QUINTANILLA, investigators transported him to the Durham County Sheriff's Office where he was interviewed regarding the shooting incident. Investigators provided QUINTANILLA his *Miranda* rights in Spanish, which he waived. During the interview, QUINTANILLA made the following admissions:

LBW

4

a. He admitted his involvement in the altercation on Interstate 40.

b. He admitted discharging his Glock 23 at least twice at the Chevrolet Silverado.

c. He admitted purchasing the Glock 23 at a gun show in West Virginia.

d. He admitted possessing a .22 caliber rifle.

e. He admitted that after the shooting, he cleaned the Honda Accord and disposed of broken glass and spent shell casings at his apartment complex's carwash station.

11. After learning that QUINTANILLA had cleaned his car, investigators searched the trash receptacle and surrounding area at the carwash station. Investigators recovered two spent .40 caliber shell casings in the trash receptacle and one spent .40 caliber shell casing on the ground.

12. A subsequent forensic examination of at least one of the spent .40 caliber shell casings revealed that it had been fired by the Glock 23 .40 caliber pistol bearing serial number LMX380.

13. QUINTANILLA was subsequently charged with one count of felony murder in Wake County, North Carolina. Following his arrest, his fingerprints were digitally submitted to ICE via an Immigration Alien Query (IAQ). The IAQ results indicated that QUINTANILLA had previously been removed from the United States and had been assigned Alien File (A-File) number AXXX XXX 757.

14. In the course of investigating this matter, I have reviewed official A-File AXXX XXX 757. This file is maintained in the name Josue Alejandro Quintanilla-

Reyes and contains this individual's biographical information, family history, records of encounters with ICE (if any), conviction records (if any), photographs, and fingerprints. Based on the review of this A-File and other records, I have concluded that it does in fact pertain to QUINTANILLA. The A-File and other records reflect the following information:

    a.    QUINTANILLA is a citizen and national of Honduras.

    b.    QUINTANILLA's date of birth is XXXXX XX, 1992, and his name is correctly reflected in this affidavit and the complaint to which it is attached.

    c.    QUINTANILLA, on or about May 15, 2014, was encountered by Border Patrol Agents (BPAs) in the Rio Grande Valley Sector near Mission, Texas. QUINTANILLA was determined to be a national and citizen of Honduras who had illegally entered the United States from Mexico, and he was administratively arrested. While being processed after his arrest, QUINTANILLA provided a sworn statement to BPAs. Prior to providing the statement, QUINTANILLA was advised of his rights as it related to immigration proceedings. QUINTANILLA indicated he understood his rights and agreed to provide a statement. During the statement, QUINTANILLA admitted the following:

        i.    He admitted being a citizen and national of Honduras by virtue of his birth in Honduras.

ii. He made no claims to United States citizenship, and he admitted that he did not possess any documentation that would authorize his entry, residence, or employment in the United States.

iii. He admitted that he illegally entered the United States via raft on or about May 14, 2014, at or near Hidalgo, Texas, and that he knew it was illegal to enter the United States in such a manner.

d. QUINTANILLA, on or about May 16, 2014, was served a "Notice and Order of Expedited Removal" (Form I-860). The Form I-860 indicated that QUINTANILLA was found inadmissible to the United States and ordered QUINTANILLA's removal from the United States.

e. QUINTANILLA, on or about June 20, 2014, was removed from the United States via aircraft at or near Alexandria, Louisiana. Prior to his removal, QUINTANILLA was warned of the penalties associated with illegal reentry via a "Notice to Alien Ordered Removed/Departure Verification" (Form I-296). The Form I-296 also served to document and verify QUINTANILLA's removal from the United States.

f. QUINTANILLA, on or about April 25, 2018, was encountered by BPAs in the Rio Grand Valley, Texas Border Patrol sector near Hidalgo, Texas. QUINTANILLA was determined to be a national and citizen of Honduras who had illegally entered the United States from Mexico, and

LBW

7

he was administratively arrested. At the time of his arrest, QUINTANILLA was travelling with his minor son, J.J.Q.P., who was also a citizen and national of Honduras illegally present in the United States. While being processed after his arrest, QUINTANILLA provided a sworn statement to BPAs. Prior to providing the statement, QUINTANILLA was verbally advised of his *Miranda* rights in the Spanish language. QUINTANILLA indicated he understood his rights and agreed to provide a statement. During the statement, QUINTANILLA admitted the following:

   i. He admitted being a national and citizen of Honduras by virtue of his birth in Tegucigalpa, Honduras, on XXXXX XX, 1992.

   ii. He admitted illegally entering the United States on or about April 23, 2018.

   iii. He admitted that he had previously been removed from the United States, and that he had never applied for permission to reenter the United States.

g. QUINTANILLA, on or about April 25, 2018, was served a "Notice of Intent/Decision to Reinstate Prior Order" (Form I-871).

h. QUINTANILLA, on or about April 26, 2018, was released from immigration custody via an "Order of Supervision" (Form I-220B) as there was insufficient detention space for QUINTANILLA and J.J.Q.P.

Upon release, QUINTANILLA indicated they would stay in North Carolina, so the Form I-220B ordered QUINTANILLA to report to the ICE Charlotte, North Carolina sub-office on May 7, 2018.

i. QUINTANILLA, on or about May 7, 2018, reported to the Charlotte, North Carolina sub-office as instructed. QUINTANILLA was ordered to report again on May 21, 2019.

j. QUINTANILLA, on or about May 21, 2019, failed to report to the Charlotte, North Carolina sub-office, as required, and became an immigration fugitive.

15. In the course of investigating this matter, I have conducted searches of DHS and other law enforcement databases, and I have confirmed that QUINTANILLA did not obtain the express consent of the Attorney General, or his successor, the Secretary of Homeland Security, to reapply for admission to the United States. Furthermore, I have determined that no approved or pending applications or petitions have been identified authorizing QUINTANILLA's entry, residence, or employment in the United States.

16. On or about June 5, 2026, an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) notified me that the Glock 23 .40 caliber pistol, bearing serial number LMX380, was not manufactured in the State of North Carolina. Therefore, the firearm possessed and utilized by QUINTANILLA during the altercation with R.B.C. on March 7, 2025, within the Eastern District of North Carolina, had previously traveled in or affected interstate commerce.

LBW
9

17. Based on all of the foregoing, I, Christopher E. Brant, believe that there is probable cause to conclude that Josue Alejandro Quintanilla-Reyes, a citizen and national of Honduras illegally and unlawfully in the United States, is guilty of unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(5)(A). I respectfully ask that the Court issue a warrant ordering his arrest for such crime.

Further your Affiant sayeth not.

CHRISTOPHER E. BRANT
Supervisory Special Agent
Homeland Security Investigations

On this __10__ day of June, 2026, Supervisory Special Agent Christopher E. Brant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this affidavit.

JAMES E. GATES
United States Magistrate Judge
Eastern District of North Carolina